UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ROBERT N. O'NEAL,

      Petitioner,

v.                                                    Case No. 4:17cv541-RH-HTC

MARK S. INCH,[1]

      Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Robert N. O'Neal's ("O'Neal") petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the Petition, the State's response with exhibits (ECF Doc. 19), and O'Neal's reply (ECF Doc. 23), the undersigned recommends the Petition be **DENIED** without an evidentiary hearing.

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Mark S. Inch as the Respondent.

O'Neal's petition is premised on eight grounds of ineffective assistance of trial counsel ("IATC").  For the reasons set forth below, the undersigned finds that Ground One of the petition, alleging that trial counsel was ineffective for failing to provide a defense or contest venue, has not been exhausted, and the state court's adjudication of the remaining IATC claims was not contrary to clearly established federal law or based on an unreasonable application of the facts to the law.  *See* 28 U.S.C. § 2254(d).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

O'Neal was charged in an Amended Information on June 20, 2008 with the following six counts:

> Count I      Sexual battery on a child under twelve, from March 1, 2001 to September 5, 2002, by union between O'Neal's mouth and A.C.'s vagina;
> Count II     Lewd or Lascivious Molestation on a child under 12, from September 6, 1997 to September 5, 2002, by touching A.C.'s genitals and breasts over and under her clothes;
> Count III    Sexual battery by familial or custodial authority on a child twelve to seventeen years old, from September 6, 2002 to May 20, 2008, by penetrating A.C.'s vagina with dildos;
> Count IV    Sexual battery by familial or custodial authority on a child twelve to seventeen years old, from September 6, 2002 to May 20, 2008, by penetrating A.C.'s vagina with his penis;
> Count V     Sexual battery by familial or custodial authority on a child twelve to seventeen years old, from September 6, 2002 to May 20, 2008, by oral union with A.C.'s vagina; and
> Count VI    Distributing Obscene Material to Minors.

Ex. A, pp. 49-50; ECF Doc. 19-1 at 57-58.

The victim, A.C., testified at trial that O'Neal, who was her stepfather, had been molesting her since she was seven or eight and started having sex with her after the first week of her twelfth birthday.  *See* Trial Tr., Ex. C through Ex. F; ECF Doc. 19-2 at 38 through ECF Doc. 19-3 at 267.  The abuse began when O'Neal made her watch pornography with him and progressed over the next ten years or so to him touching her vagina over, and then under, her clothes; then to oral sex performed by O'Neal on A.C.; then to vaginal penetration with dildos; and finally, shortly after age twelve, to sexual intercourse.

The abuse continued until May 19, 2008, when A.C. told her mom about O'Neal's conduct.  She was seventeen at that time.  A.C. told her mother about O'Neal's abuse after her mother scolded her about having sex with her boyfriend. A.C.'s mother confronted O'Neal, and O'Neal responded that it was A.C.'s word against his.  A.C.'s mother and A.C. left the home and went to a hotel where A.C.'s mother called the authorities.

On July 22, 2010, the jury found O'Neal not guilty of Counts I and II but guilty as charged to Counts III, IV, and V.  Ex A, p. 134-38; ECF Doc. 19-1 at 142-46.[2]  On August 25, 2010, the trial court sentenced O'Neal on Count III to thirty (30) years imprisonment and on Counts IV and V, to fifteen (15) years imprisonment.

---

[2] The trial court granted a judgment of acquittal on Count VI.  Ex. E, p. 432; ECF Doc. 19-3 at 126-28.

Ex. G p. 37; ECF Doc. 19-3 at 307.  The sentences on Counts IV and V were to run concurrently with each other, but together they ran consecutively to the sentence on Count III, for a total effective sentence of forty-five (45) years imprisonment.  *Id.*

O'Neal filed a direct appeal on August 31, 2010.  Ex. A, p. 155; ECF Doc. 19-1 at 163.  The First DCA issued a *per curiam* opinion affirming the judgment and sentence without written opinion on August 16, 2011.  Ex. J; ECF Doc. 19-4 at 57. The conviction became final November 14, 2011, ninety (90) days after the date of the First DCA opinion, when the time for seeking Supreme Court review expired. *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A).").

O'Neal filed a motion for modification of his sentence under Fla. R. Crim. P. 3.800(c) on November 7, 2011, which was denied on May 15, 2012.[3]  O'Neal, through counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on October 31, 2012.[4]  Ex. K, p. 4; ECF Doc. 19-4 at 65. The state court held an evidentiary hearing on April 29, 2016 and denied the motion

---

[3] The 3.800(c) motion was docket # 186 in Case No. 2008 CF 001820, and the order denying it was docket # 194.  Since the motion was filed before the time for seeking U.S. Supreme Court review expired, no time on the § 2254(d) limitations clock ran before the motion was denied.
[4] 169 days on the § 2254(d) limitations clock ran between May 15, 2012 and October 31, 2012.

on June 15, 2016.  Ex. K, p. 77; ECF Doc. 19-4 at 138.  O'Neal appealed on June

27, 2016, Ex. K, pp. 173-74; ECF Doc. 19-5 at 31-32, and the First DCA affirmed

*per curiam* and without written opinion on August 4, 2017.  Ex. O; ECF Doc. 19-6

at 22.  O'Neal filed a Motion for Rehearing and for Issuance of a Detailed Written

Opinion, which the First DCA denied on October 6, 2017.  Ex. P; ECF Doc. 19-6 at

26-31.  The mandate was issued October 27, 2017, on which date the tolling of the

§ 2244(d) limitations period stopped.  Ex. Q; ECF Doc. 19-6 at 34.   *See Lawrence

v. Fla.,* 549 U.S. 327, 332 (2007) (a state postconviction application remains pending

"until the application has achieved final resolution through the State's postconviction

procedures.") and *Wells v. State*, 132 So.3d 1110, 1113 (Fla. 2014) (holding that

Florida Supreme Court lacks jurisdiction to grant discretionary review of a Florida

DCA's *per curiam* affirmance without written opinion; therefore, issuance of Florida

DCA's mandate is the final resolution of Florida's postconviction procedures).

O'Neal filed the instant federal petition thirty-two (32) days later, on

November 28, 2017, by delivering it to Union Correctional Institution mail officials.

ECF Doc. 1 at 1.  The instant petition was therefore timely filed because at most

only 201 days of untolled time had expired from November 14, 2011, when O'Neal's

judgment became final, until the time he filed the instant petition.

## II.   EXHAUSTION AND PROCEDURAL DEFAULT

Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies.  28 U.S.C. § 2254(b), (c).  A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks and brackets omitted).  For an issue to be "fairly presented," a petitioner must have "presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation."  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and quotations omitted).

### A. Dismissal of a Procedurally Defaulted Claim

If a petitioner fails to exhaust state remedies, the district court must generally dismiss the claims without prejudice to allow the petitioner an opportunity to present the claims before a state court.  *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007).  However, if it is obvious that the unexhausted claim would be procedurally barred in state court, the federal court should treat the unexhausted claim as procedurally defaulted.  *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (*per curiam*) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted,

even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

The only exceptions to the doctrine of procedural default is where a petitioner has established "cause and prejudice or the fundamental miscarriage of justice," *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a

reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

### B.    O'Neal Failed to Fairly Present Ground One to the State Court

In Ground One of his petition, O'Neal argues trial counsel was ineffective by failing to object to improper venue and admission of other crime evidence in relation to DNA evidence and testimony connected to a comforter found in the family R.V. ECF Doc 1 at 7. Specifically, O'Neal argues defense counsel failed to "assure proper legal procedure was maintained" and failed "to object contemporaneously" which resulted in "tainting the color of Venue law" and allowed evidence of an uncharged crime to be admitted in the instant case. *Id.* While O'Neal's argument is not clear, it appears O'Neal takes issue with the admission of evidence of DNA samples on the comforter as establishing venue in Leon County, Florida, where the case was tried. As discussed below, O'Neal has failed to exhaust this claim and the claim is procedurally defaulted.

A.C. testified that on the afternoon of May 19, 2008, O'Neal performed oral sex on A.C. on a comforter in the family RV but was interrupted before it turned into penile-vaginal sex. Law enforcement seized the comforter and found 27 stains on it, one of which tested positive for semen. That stain was tested by a DNA expert, who testified that several profiles were "laid on top" of each other. First, the mother's DNA was compared to the found profiles and she was excluded as a donor.

The DNA expert further testified that A.C.'s DNA was compared and A.C. was found to be a major donor (the odds of that profile not being hers but randomly matching hers were over a quadrillion to 1). O'Neal could not be excluded as a donor of the semen because his DNA profile matched three of the DNA loci tested and did not conflict with any of the DNA loci tested. Based on three loci match, the minor donor profile which partially matched O'Neal could be found in 1 out of 16 Caucasians and 1 out of 6 African-Americans.

O'Neal argues the semen on the comforter in the same spot as A.C.'s DNA could not be from him because A.C. testified O'Neal had performed only oral sex on the comforter while the R.V. was in Leon County. O'Neal further argues that according to A.C.'s testimony, O'Neal subjected her to penile-vaginal contact on the comforter on a previous occasion, while they were in Destin, a location outside the jurisdiction of the state trial court. ECF Doc. 19-2 at 9-10. O'Neal thus argues that evidence that his DNA was in the same spot on the comforter as A.C.'s DNA only tended to prove the occurrence of a sex act outside the district and which was not charged as an offense in the instant case. By not getting this evidence excluded, according to O'Neal, counsel "failed to assure proper venue was assumed . . . in violation of due process." ECF Doc. 1 at 8.

O'Neal, however, failed to present this argument to the state courts in either the direct appeal or the 3.850 motion. In his direct appeal, O'Neal presented only

two issues: (1) whether the trial court committed fundamental error by allowing admission of, and prosecutorial comments on, evidence that O'Neal searched the Internet for advice about hiring a lawyer and how to defend against false accusations of abuse; and (2) whether the trial court committed fundamental error by allowing allegedly inflammatory and burden-shifting comments in the prosecutor's closing. Ex. H at i, ECF Doc. 19-4 at 4. He mentioned nothing about the comforter evidence or lack of venue.

In his 3.850 motion, O'Neal referenced the comforter in two arguments. First, he argued the prosecutor was "confusing and misleading" when she testified that semen -- of which O'Neal could not be excluded as a donor -- was "laid on top of" A.C.'s DNA at a certain spot on the comforter and that this placement corroborated A.C.'s testimony that an incident occurred on the comforter on the day of O'Neal's arrest. *Id.* at 71. That is not the same argument he makes here. Second, he argued the prosecution withheld a FDLE crime lab report concerning the buccal swabs taken from the victim's mother. ECF Doc. 19-4 at 82. That is also not the same argument he makes here.

O'Neal is barred under Florida law from now bringing this claim in a state postconviction proceeding.[5]    Such a claim is untimely under Fla. R. Crim. P.

---

[5] Even if it was not procedurally barred, this claim would also fail on its merits. First, counsel did, in fact, raise concerns about introduction of DNA evidence from the comforter and made the strategic decision to deal with the evidence on cross examination and argument rather than seek to

3.850(b) because his judgment of conviction became final more than two years ago. Additionally, none of the exceptions to Rule 3.850(b) apply to O'Neal. O'Neal knew the facts on which the claim is predicated well before his 2-year deadline. O'Neal's claim is not based on a "fundamental constitutional right ... not established within the period provided for herein and ... held to apply retroactively." Rule 3.850(b)(2). Finally, the time for O'Neal to file a 3.850 motion under Rule 3.850(b)(3) expired in November 2015.

Similarly, neither the "cause and prejudice" nor "miscarriage of justice" exception saves this procedurally defaulted claim. O'Neal has presented nothing to suggest that any "objective factor external to the defense impeded the effort to raise the claim properly" in his first 3.850 motion. *See Wright*, 169 F. 3d at 703. He also cannot show that counsel's alleged error "infected the entire trial with error of constitutional dimensions" such that there is "a reasonable probability of a different outcome." *Crawford v. Head*, 311 F.3d at 1327-28.

A.C. testified she lived at the Clifton Drive house – in the jurisdiction of the state court -- starting in 2000 and continuing until at least May 20, 2008. A.C. testified O'Neal began using the dildos shortly before she turned 12 on September 6, 2002, and that he would use the sexual devices "[e]very time he would perform

---

have it excluded. Ex. C, p. 14-15; ECF Doc. 19-2 at 51-52. Second, counsel effectively showed that because it was used by all members of the family, the evidentiary impact of the comforter was not great for identifying what acts happened upon it. Ex. E, p. 533; ECF Doc. 19-3 at 230.

oral sex. . . .  And that was before we would – it would be oral sex.  Then vagina-penis with penetration."  Ex. C, p. 96; ECF Doc. 19-2 at 133.  She also testified the vaginal-penis sex continued until she was seventeen, that a specific act of oral sex occurred on May 19, 2008, and that it would have led to penile-vaginal intercourse. Thus, she testified that all three types of sexual activity occurred at Clifton Drive between September 6, 2002 and May 20, 2008, as charged in Counts III, IV, and V.[6]

Also, A.C. testified she never used the dildos by herself, but her DNA was found on three of the dildos.  Ex. C, p. 88; ECF Doc. 19-2 at 125 and Ex. E, p. 375-76; ECF Doc. 19-3 at 71-72.  She testified she contracted the same sexually transmitted disease O'Neal had shortly after they began having penile-vaginal intercourse and she used protection with her boyfriend.  Also, A.C., her mother, and O'Neal himself testified that O'Neal was caught in A.C.'s room one night.  His explanation at trial -- that he was hiding in the closet to play a practical joke on his wife by jumping out and startling her – was contradicted by A.C.'s testimony, the mother's testimony, and O'Neal's own testimony a few seconds later that he was concerned about making excessive noise and waking the kids.  A.C.'s boyfriend testified she had told him about having sex with O'Neal a month before the

---

[6] Count III charged sexual battery by familial or custodial authority on a child twelve to seventeen years old, from September 6, 2002 to May 20, 2008, by penetrating A.C.'s vagina with dildos. Count IV charged the same crime during the same time period but with penile-vaginal penetration; likewise, Count V charged the same crime during the same time period but with oral union between O'Neal's mouth and A.C.'s vagina.

revelation by A.C. to her mother. The jury also heard evidence that O'Neal attempted to throw away various sexual toys, lube and condom wrappers and appeared to have hidden a bag containing other similar items in his closet behind hanging clothes, allowing the inference of consciousness of guilt. Simply, O'Neal cannot show cause and prejudice or a fundamental miscarriage of justice. This evidence contradicts any claim that O'Neal was actually innocent.

Finally, in support of his venue argument, O'Neal also claims the State's DNA expert witness "elected to not include and compare A.C.'s biological mother" as a possible donor of the substance attributed to A.C. on the comforter. ECF Doc. 1 at 10 (emphasis in original). This assertion by O'Neal is flatly contradicted by the record. At trial, the DNA expert testified that she did, in fact, compare the evidence on the comforter to a sample from the mother and was able to exclude her as a possible donor. Ex. E, p. 391; ECF Doc. 19-3 at 87. Thus, to the extent that O'Neal intended this part of Ground One to stand as an independent argument, it also fails on the merits. An attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted).

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A.      Federal review of state court decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).  *See id.*, at 412-13 (O'Connor, J., concurring).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).  Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the case."  *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Finally, in determining whether the state court's decision "was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the state court's determination of factual issues is presumed correct. *See Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). The burden is on the petitioner to rebut that presumption of correctness by clear and convincing evidence. *See id.* at 835-36; 28 U.S.C. § 2254(e)(1); *see also*, *Siplen v. Sec'y, Fla. Dept. of Corr.*, 649 F. App'x 809, 811 (11th Cir. 2016). Additionally, this Court must accept the state court's credibility determinations. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsels'] testimony over [petitioner's]."); *see also*, *Consalvo v. Sec'y for Dept. of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review").

**B.    Standards for an Ineffective Assistance of Counsel Claim**

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists

that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations that the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Because the First DCA issued a *per curiam* affirmance of the denial of O'Neal's Rule 3.850 Motion, the undersigned will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, that last decision comes from the state court's

Order Denying Motion for Post-Conviction Relief.  Ex. K, p. 77; ECF Doc. 19-4 at 138.

### C.    O'Neal's Remaining IATC Claims.

In Ground Two of O'Neal's petition, he raises seven (7) claims of IATC, which were also raised in his state 3.850 motion.  Thus, O'Neal has exhausted these claims.  ECF Doc. 19 at 26.

1.    <u>IATC for failing to investigate and retain an expert to examine the DNA evidence on the comforter.</u>

O'Neal claims trial counsel should have determined what was in all the 27 spots on the comforter to show the spots could be from intercourse between O'Neal and his wife or between A.C. and her African-American boyfriend (since the DNA expert testified that the semen sample matched 1 in 6 African-American males).[7]  He also argues counsel should have introduced evidence that the mother's DNA profile was similar to A.C.'s and left out of the examination of the semen spot.

The state court applied *Strickland* and denied O'Neal relief on this claim.  First, the court found the DNA evidence was not confusing or very incriminating and so no expert was required to interpret it.  The judge also agreed with defense counsel that there was no dispute O'Neal was having sex with A.C.'s mother and

---

[7] To the extent that O'Neal attempts to argue counsel was ineffective for failing to have the DNA profiles of A.C.'s African-American sexual partners taken, this claim was raised as Ground III in his 3.850 motion and is addressed under Issue 3, *infra*.

using the sex toys with her; thus, finding her DNA on the comforter or the dildos would not prove anything. Ex. K, p. 78; ECF Doc. 19-4 at 139. Further investigation and hiring experts would not add anything to the defense's case. Therefore, the court found counsel's performance did not fall below an objective standard of reasonableness and O'Neal failed to show any prejudice. This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

As an initial matter, as discussed above, the DNA expert did include DNA profile of the mother in her analysis of the semen stain on the comforter and was able to exclude her as a possible donor. Ex. E, p. 391; ECF Doc. 19-3 at 87. Also, defense counsel did not need DNA expert testimony to put in the jury's mind that the comforter was of low evidentiary value because everyone in the family likely interacted with the comforter on an intimate basis. Counsel got the DNA expert to testify that it would not be surprising to find O'Neal's DNA, and by implication his wife's DNA, on the comforter. Also, in closing, defense counsel was able to argue that O'Neal and the mother were married and sexually active and thus it was just as likely that the stains on the comforter were from their sexual encounters. Thus, as defense counsel testified at the state evidentiary hearing, finding the wife's DNA on the comforter would not have proved anything extra. Ex. K, p. 182-83; ECF Doc.

19-5 at 40-41.  The undersigned agrees with the state court that this claim is without

merit.

2.    <u>IATC for failing to investigate and demonstrate "fundamental error" in admission at trial of dog food bag</u>

On May 20, 2008, the same day O'Neal was arrested, A.C.'s mother returned

to the family home and found a used dog food bag placed in between the cab and the

bed of O'Neal's truck.  A.C.'s mother testified the dog food bag was filled with sex

toys, empty lube containers and condom wrappers, and O'Neal admitted to the

contents of the bag.  He also admitted he had placed the bag there to discard the

items.  After discovering the bag, the mother contacted the police who retrieved the

dog food bag and its contents.  A.C. was never asked at trial if the sex toys in the

dog food bag were used on her.

O'Neal argues trial counsel should have objected to the admission of the used

dog food bag because it "had no probative value, as nothing identified there-in was

declared by A.C. as having ever being used on her in the commission of any sexual

act." ECF Doc. 1 at 19-20.  O'Neal argues the evidence was offered simply "to show

negative character of Petitioner and propensity to commit sexual acts of an

unbecoming nature. In actuality, it was 'non-evidence' connected to any charge

levied." *Id.* at 20.  The state court denied relief on this claim, finding that defense

counsel argued the items were not admissible based on relevance, cumulative

evidence and a 403 balancing test; that counsel's argument was intelligent and

logical; and that counsel's representation did not fall below an objective standard of reasonableness.  Ex. K, p. 79; ECF Doc. 19-4 at 140.  The state court also found defendant failed to show any prejudice.  *Id.*

A review of the record shows the state court's determination was reasonable. On the morning of the trial, the judge asked the parties if there were any objections regarding the exhibits.  Defense counsel objected to the admission of the contents of the dog food bag, and the State explained that the sex toys in the bag were not ones that A.C. would testify were used on her.  Nevertheless, the trial judge found the contents relevant because, "[t]ypically, one wouldn't stick dildos and lubricant in a dog food bag and put it in their car."  Ex. C, p. 11; ECF Doc. 19-2 at 48. Additionally, the trial court found the dog food bag's probative value outweighed the prejudicial effect and stated, "[g]iven the circumstances in which the objects, where they were placed, what they were put in and the timing and the context and so forth, I find not only are they relevant, but the probative value does not -- the prejudice does not outweigh the probative value so the motion in limine is denied." Ex. C, p. 30; ECF Doc. 19-2 at 67.

Given the trial judge's opinion that "I don't think it's a close call" any further objection by counsel was not likely to be successful.  Counsel cannot be deemed ineffective for failing to raise a meritless objection, *see Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be

ineffective for failing to raise a meritless argument); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). The state court's conclusion that counsel's performance was not deficient for failing to further object and that O'Neal cannot show prejudice was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

      3.      <u>IATC for failing to have any forensics done to develop exculpatory evidence</u>

Five (5) days after O'Neal's arrest, A.C.'s mother found a beach bag on a shelf behind some hanging clothes that usually was not there. The bag was hidden from view. She called the police, who seized the bag. It contained five (5) dildos. The mother testified at trial she had not put that bag there. A.C. testified all the dildos in the beach bag had been used on her by O'Neal. The DNA expert testified that three of them were found to have A.C.'s DNA on them. A.C. testified she never used the dildos on herself; they were only used by O'Neal on her.

O'Neal argues defense counsel did not mount an effective strategy of using forensic evidence, cross examination of the DNA expert, and testimony of "witnesses who were identified by the Petitioner" to show A.C.'s motion and animus toward O'Neal and that other contributors' DNA might have been on the sex toys and the comforter. O'Neal points out that pubic hairs from A.C.'s panties were never

tested; semen with sperm heads (which could not have come from O'Neal, who was vasectomized) swabbed from A.C.'s labial folds was never connected with a possible donor; DNA profiles from A.C.'s sexual partners other than O'Neal were not obtained; and counsel never investigated or demonstrated to the jury that the beach bag was unaccounted for over five days between the report of the abuse and the discovery of the bag by the wife; and counsel failed to investigate and argue that the items in the beach bag could have been comingled and cross-contaminated.

Although not fully explained in the instant petition, O'Neal's argument concerning the 5-day delay in finding the bag is more fully explained in his 3.850 motion.  He argued there (1) all the dildos which A.C. reported were used on her, and all the dildos which had her DNA on them, were found in that bag; and (2) A.C. may have used the dildos on herself -- or with her friends -- during the 5-day period they were unaccounted for, thus explaining why her DNA would be on them.  Ex. K, pp. 12-15; ECF Doc. 19-4 at 73-76.

The state court denied relief on this claim because defense counsel testified he did not have a legal basis to object to the introduction of the dildos found in the beach bag if the victim could identify them; hiring an expert to link the dildos to the victim's friends would be a "shot in the dark," as there was no evidence that the victim's friends used the dildos; and both the victim and her boyfriend testified they

had vaginal intercourse, so DNA testing was not necessary to prove they had sex. Ex. K, p. 79-80; ECF Doc. 19-4 at 140-41.

The state court's conclusions are not unreasonable.  First, as defense counsel explained during the evidentiary hearing, a motion to obtain DNA from A.C.'s friends was unlikely to be granted.  Ex. K, p. 187; ECF Doc. 19-5 at 45.  Defense counsel cannot be deemed to have performed deficiently by declining to file a motion that would have been futile.  *Grinard–Henry v. United States*, 2006 WL 2265416 at *3 (M.D. Fla. Aug. 8, 2006).  For the same reason, such a choice by counsel cannot satisfy the "prejudice" prong of *Strickland*.  *See also Salcedo–Palma v. United States*, 2005 WL 1243775 (M.D. Fla. 2005) (finding that defense counsel was not ineffective in failing to file a "futile" motion to suppress).

Also, defense counsel effectively made the very argument raised by O'Neal. During his closing argument, defense counsel argued to the jury that there was evidence to show that A.C. used the sex toys on herself.  Ex. F, p. 534; ECF Doc. 19-3 at 231.  Therefore, upon review of the record, the undersigned agrees that defense counsel was effective in presenting the essentials of O'Neal's argument on this issue to the jury and that seeking subpoenas to obtain DNA testing of her friends would likely be denied as a fishing expedition -- or "shot in the dark" as trial counsel characterized it.   O'Neal cannot show prejudice because obtaining the DNA evidence of the friends would not add much to the argument already effectively

presented at trial by defense counsel since A.C. admitted to her sexual activity on the stand.  Thus, the state court's denial of this ground was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

4.    <u>IATC for Turning over Responsibility for Serving and Executing Subpoenas on Social Media Companies to the Government</u>

O'Neal argues that defense erred in failing to object before trial, and within a reasonable time after trial, to the court allowing the state to serve the subpoenas on social media companies for electronic communications involving A.C. [8]  O'Neal's counsel testified at the evidentiary hearing that he made the strategic choice to allow the State to proceed with issuing and executing the subpoena because "we agreed that was the best way to get that information in…. as a practical matter, businesses, entities respond better to demands from the State than they do from defense counsel."  Ex. K, p. 195; ECF Doc. 19-5 at 53.  Additionally, defense counsel testified he had no reason to believe the information provided by the State had been edited or portions omitted.  Ex. K, p. 195-98; ECF Doc. 19-5 at 53-56.

---

[8] In his petition, O'Neal adds to this claim that defense counsel failed to follow up on the existence of another Instant Message supplier used by A.C. to communicate with her friends.  ECF Doc. 1 at 21-23.  This claim was not raised in his 3.850 motion.  Thus, to the extent O'Neal seeks to assert this as a separate ground for relief, for the same reasons set forth in Section II above, this claim is procedurally defaulted.

Moreover, the record shows that defense counsel thoroughly explored and presented to the jury the issue of A.C.'s untruthfulness regarding her sexual activity. Thus, any additional electronic messages further highlighting her sexual activity and untruthfulness would have had very little additional effect. The state court denied O'Neal relief on this claim finding that "counsel's representation was part of a tactical strategy that falls within an objective standard of reasonableness." Ex. K, p. 80-81; ECF Doc. 19-4 at 141-42. For the reasons given above, this conclusion of the state judge was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

5.   IATC for Failing to Investigate and Argue That A.C. May Have Contracted the Herpes Virus from Sources other than O'Neal

O'Neal admitted he thought he might have acquired genital herpes from his wife but argues the admission was made because he thought A.C. had not contacted genital herpes, and therefore such an admission would make it less likely that he had engaged in unprotected sex with A.C. for five years.[9] ECF Doc. 1 at 23-24. However, A.C. did have genital herpes, and the State offered argument that she

---

[9] However, the mother testified during the trial that she knew O'Neal had herpes because "he had open lesions. We were tested." Ex. D, p. 164; ECF Doc. 19-2 at 202. In his Reply, O'Neal claims, without providing supporting documentation, that "subsequent to conviction and while at DOC, Petitioner has been tested for sexually transmitted disease and was found clear of any detectable!" ECF Doc. 23 at 9.

acquired it from O'Neal during unprotected sex.  Thus, O'Neal argues in the instant petition that counsel was ineffective for failing to test O'Neal to see if he, in fact, had genital herpes, and by not arguing other potential ways A.C. could have contacted the virus.

That is, O'Neal argues A.C. could have gotten herpes from using the dildos on herself after they were contaminated by being used by her mother.  A.C. could also have gotten herpes from her sexual partners other than O'Neal, since the presence of sperm heads in her vagina showed that she had had unprotected sex with a male who was not vasectomized.  Thus, O'Neal argues counsel should have moved the court to have O'Neal, the dildos and A.C.'s sexual partners tested for genital herpes.  ECF Doc. 1 at 23-24.

The state court denied Rule 3.850 relief because defense counsel testified he did investigate this issue and in fact contacted an expert who explained that the Herpes virus would live for less than one hour on an inanimate object like a dildo. Thus, defense counsel determined that any such testimony would be inculpatory rather than exculpatory.  Ex. K, p. 81; ECF Doc. 19-4 at 142.

The undersigned agrees with the state court that the strategic choice of counsel to not hire an expert on this issue was reasonable given counsel's investigation.  "It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence.

Even a dozen years before there was any AEDPA deference, the Supreme Court noted that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"  *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).  "Strickland mandated one layer of deference to the decisions of trial counsel. . . .  When § 2254(d) was amended by AEDPA in 1996, that added another layer."  *Nance*, 922 F.3d at 1303.  Given the deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."  *Johnson v. Sec'y*, DOC, 643 F.3d 907, 911 (11th Cir. 2011).  And, "for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel."  *Nance*, 922 F.3d at 1303.  Therefore, the state judge's conclusion on this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

The state court, however, did not address the other component of O'Neal's argument: that counsel failed to investigate and argue that the herpes virus could have been transmitted to A.C. through unprotected sex with partners other than O'Neal.  In such a circumstance, the Supreme Court's decision in *Harrington v. Richter*, 562 U.S. 86 (2011) instructs that "[w]hen a federal claim has been presented

to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *See id*. at 99.  Additionally, the Court stated in *Richter* that "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

Here, there is no contrary indication or state-law principle to counter the presumption that the First DCA addressed the claim on the merits.  Therefore, O'Neal must show that there is no reasonable basis for the First DCA to have denied relief on this claim.  For the following reasons, a reasonable basis for the First DCA to deny relief was that the decision not to move the court to order herpes tests of A.C.'s sexual partners was a reasonable strategic decision of counsel which did not prejudice O'Neal.

First, as noted above, trial counsel reasonably felt that such a motion was likely to be denied as a fishing expedition or "shot in the dark."  Second, even if her sexual partners were infected, this would not exclude the possibility that she, already infected by O'Neal, gave them herpes and not the other way around.  Thus, the evidence would not really prove anything.  Third, O'Neal cannot show prejudice from the strategic choice because evidence of A.C.'s unprotected sexual activity was already introduced in her own testimony, the testimony of her boyfriend, and the

evidence of sperm heads in her vaginal swab.  Thus, all the information needed for the jury to infer that A.C. contracted the herpes from unprotected sex with partners other than O'Neal was before the jury.  This additional evidence would have added little more, if anything.  Thus, a reasonable basis existed for the First DCA to deny this claim on the merits.

6.    IATC for Failing to Object to Admission of Exhibit #20

When O'Neal was arrested, law enforcement officers found ten to fifteen sheets of paper on the dashboard of his truck, containing printouts from three websites.  Two concerned what to do when falsely accused of abuse and one dealt with how to select a lawyer to defend against an abuse charge.  O'Neal argues trial counsel was ineffective for failing to object to the admission of these printouts.  O'Neal characterizes this information as his first attempt to seek legal advice.  He claims he was prejudiced because the State characterized the printouts as a "premeditated effort to throw off suspicion."  ECF Doc. 1 at 24-25.  He asserts that counsel should have argued "the right of the accused to legally and properly seek such advice without condemnation."  *Id.*

The state court denied Rule 3.850 relief on this claim because defense counsel objected to any witness interpreting the information contained in the documents and the objection was sustained.  Ex. K, pp. 81-82; ECF Doc. 19-4 at 143.  The undersigned finds this conclusion was not contrary to, and did not involve an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

During the trial, the State introduced the titles of the websites through Investigator Baldwin's testimony.  Ex. D 286-88; ECF Doc 19-2 at 325-27.  Defense counsel then questioned O'Neal about the web searches and O'Neal told the jury he "was upset", so he "got online to find out what to do if you're ever accused, falsely accused" and "ran a couple of prints of sites that were available so that [he] could familiarize myself with what to do."  Ex. F, p. 471; ECF Doc. 19-3 at 168.  The State also mentioned the documents in its rebuttal closing but did so to rebut O'Neal's contention that he was being falsely accused.  Ex. F, p. 544; ECF Doc. 19-3 at 241.

As the state court noted, this evidence helped the defense as much or more than it helped the State.  In his testimony, O'Neal was allowed to point to the printouts as evidence that he believed he was falsely accused and was able to try to convince the jury he could "never imagine" being accused of such a thing.  The prosecutor's only use of the evidence in argument was to attempt to show that O'Neal only printed out the websites "to look good."  This was a legitimate point for the State to make, and it was up to the jury to decide whether O'Neal's or the State's explanation was more likely.  In any event, it would not have been an unreasonable strategy to allow the evidence in as evidence that O'Neal took actions consistent with believing he was falsely accused.  Given the deference due to

counsel's strategic decisions, the state court was not unreasonable in finding this not to be deficient attorney performance.

### 7.   IATC for Failing to Mount "Any Discernable and Viable Defense" and Failing to Make a Proper Motion for Judgment of Acquittal

O'Neal combines Grounds VII and VIII from his 3.850 motion into one issue in the instant petition. ECF Doc. 1 at 25. First, he argues defense counsel made "no, or very little, effort at investigation or demonstration of exculpatory evidence and witnesses available" and "seemingly if not literally abandoned his defense." *Id.* He also argues the "cumulative effect of the errors made by Defense Counsel" left him no better off than if he had proceeded without counsel. *Id.*

At the Rule 3.850 evidentiary hearing, defense counsel testified (1) he discussed the defense with Defendant in detail on multiple occasions and that if Defendant had insisted on a different defense counsel would have pursued such defense; (2) the defense was to attack the victim's credibility by bringing up every instance of her untruthfulness and presenting evidence of recent fabrication by the victim; and (3) the DNA evidence was pretty simple, and the results on the comforter were weak statistically. Ex. K, pp. 81-82; ECF Doc. 19-4 at 143-44. The state court relied on this testimony as well as the record, which the court determined showed defense counsel (1) did an effective cross-examination of A.C., her mother and her boyfriend; (2) argued A.C. and her mother pursued these allegations because O'Neal was going to divorce her and they wanted control over his assets; (3) performed a

knowledgeable and detailed cross examination of the DNA expert; and (4) delivered a detailed and persuasive closing argument. Ex. K, pp. 81-82; ECF Doc. 19-4 at 143-44.

Under *Strickland*, a finding of ineffective assistance of counsel "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Additionally, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. For the reasons discussed throughout this Report and Recommendation and discussed by the state 3.850 judge, counsel vigorously and effectively represented O'Neal and was far beyond the minimum counsel required by the Sixth Amendment. Thus, the state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

O'Neal also argued that his counsel was ineffective for not moving for a judgment of acquittal on counts III, IV and V. The state court denied this claim, pointing out, first, that counsel did ask for and receive a judgment of acquittal on Count VI and a not guilty finding on Counts I and II. The state court then found that defense counsel's decision to concede a prima facie case regarding the other three

counts did not fall below an objective standard of reasonableness and that O'Neal had not shown a reasonable probability that moving for a judgment of acquittal would have changed the outcome of the trial.  Ex. K, p. 83; ECF Doc. 19-4 at 144.

Where a motion for judgment of acquittal would have had no likelihood of success, a petitioner has failed to show either deficient performance or prejudice under *Strickland.  Livingston v. McNeil*, 2010 WL 385369, at *10 (N.D. Fla. Jan. 27, 2010).  Under Florida law, the fact that the evidence is contradictory does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury.  *Fitzpatrick v. State*, 900 So.2d 495, 508 (Fla. 2005).  It is not the province of the Court in ruling on a motion for judgment of acquittal to determine whether the witnesses' testimony is credible. The jury was required to perform its task of weighing the credibility of the evidence presented.  Here, as discussed in section III., *supra*, sufficient evidence existed to create a jury issue as to whether vaginal penetration with dildos, vaginal penetration with O'Neal's penis, and vaginal/oral contact occurred from September 6, 2002 to May 19, 2008, which were the charges in Counts III, IV and V.  Therefore, any motion for judgment of acquittal would have been denied, and the state judge's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

## C.    Evidentiary hearing

The undersigned finds that an evidentiary hearing is not warranted.    In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).   Additionally, this Court must consider the deferential standards prescribed by § 2254, especially where an evidentiary hearing was held in state court, which is the case here. *See id.*   Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## IV.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2254 Rule 11(a).   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) **provides**: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.     The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And, it is respectfully RECOMMENDED:

1.     That Petitioner's petition under 28 U.S.C. § 2254 be DENIED without an evidentiary hearing; that a certificate of appealability be DENIED; and that the clerk close this matter.

At Pensacola, Florida, this 8th day of November, 2019.

_/s/ Hope Thai Cannon_____
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.